UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
RICHARD SCOTT,

                    Plaintiff,                    **COMPLAINT**

      -against-

                                            **JURY TRIAL DEMANDED**

PA AUSTIN, LLC, d/b/a PARTS AUTHORITY, INC., and
ROBERT POSMA, Individually,

                    Defendants.
------------------------------------------------------------------X

Plaintiff RICHARD SCOTT ("Plaintiff" or "Scott"), by and through his attorneys, Joseph & Norinsberg, LLC, brings this Complaint against Defendants PA AUSTIN, LLC, d/b/a PARTS AUTHORITY, INC. ("PARTS AUTHORITY"), and ROBERT POSMA ("POSMA"), in his individual and professional capacity (collectively "Defendants").  Plaintiff, on behalf of himself, hereby states and alleges as follows:

<u>**NATURE OF CASE**</u>

1.      This is a civil action based upon Defendants' violations of one or more of Plaintiff's rights guaranteed by: (i) the overtime provisions of the Fair Labor Standards Acts ("FLSA"), 29 U.S.C. § 207(a); (ii) the overtime provisions of the New York Labor Law ("NYLL"), N.Y. Lab. Law § 160; (iii) the anti-discrimination and hostile work environment provisions contained in Title 8 of the Administrative Code of the City of New York, also known as the New York City Human Rights Law ("NYCHRL"); (iv) the anti-discrimination and hostile work environment provisions contained in § 296(1)(a) of New York State's Human Rights Law ("NYSHRL"); (v) the anti-discrimination and hostile work environment provisions of 42 U.S.C. 1981 ("§ 1981"); (vi) the

anti-retaliation provisions contained in the NYCHR and NYSHRL; and (vii) and any other cause(s) of action that can be inferred from the facts set forth herein.

2.     Plaintiff seeks equitable relief and monetary damages as redress for Defendants' blatant violations of Plaintiff's rights under the above referenced federal, state and municipal laws protecting the rights of employees in the workplace.

## JURISDICTION AND VENUE

3.     The jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331, as this action involves a question of federal law arising under 29 U.S.C. § 207(a).

4.     This Court has supplemental jurisdiction over all state and municipal law claims stated herein pursuant to 28 U.S.C. § 1367(a), which confers supplemental jurisdiction over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b)(ii), as all acts comprising the claims for relief occurred within this judicial district.

## JURY DEMAND

6.     Plaintiff respectfully demands a trial by jury on each count of this complaint pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7.     At all relevant times herein, Plaintiff Richard Scott was and is a resident of the City and State of New York, maintaining an address at 1348 Webster Avenue, Apt. 20D, Bronx, New York.

8.      At all relevant times herein, Plaintiff worked for Defendant Parts Authority and is considered an "employee" entitled to protection as defined by the FLSA, NYLL, NYSHRL and NYCHRL.

9.      At all relevant times herein, Defendant PA AUSTIN, LLC, d/b/a PARTS AUTHORITY, INC. ("Parts Authority"), was and is a limited liability company with a principal place of business located at 211-10 Hillside Avenue, in the County of Queens, in the City and State of New York.

10.     At all times relevant herein, Defendant Parts Authority was an "employer" and "person" within the meaning of the NYSHRL and NYCHRL and employed four or more "employees" within the meaning of the NYSHRL and NYCHRL.

11.     At all relevant times herein, Defendant Robert Posma was and is an individual and an employee of Defendant Parts Authority, where he functioned as Plaintiff's direct supervisor and manager.

12.     Upon information and belief, at all relevant times herein Defendant Posma was and is a resident of the State of New York.

13.     At all relevant times herein, Defendants Parts Authority and Posma were and are "employers" and "persons" within the meaning of the FLSA and NYLL.

14.     Defendants Parts Authority's qualifying annual business exceeds $500,000.00, and all of Defendants' employees, including Plaintiff, were and are engaged in interstate commerce because they handle goods that are sold, distributed, and manufactured through channels of interstate commerce. Accordingly, Defendant Parts Authority is subject to the FLSA's overtime requirements.

15.     At all times relevant herein, Defendant Parts Authority had control over Plaintiff's rate of pay, work schedule, job duties and all other terms and conditions of employment.

16.     At all times relevant herein, Plaintiff worked for Defendant Parts Authority at offices located at 1601 Bronxdale Avenue, Bronx County, in the City and State of New York.

## PRELIMINARY STATEMENT

17.     Defendants willfully misclassified Plaintiff as an exempt worker in order to deny him his lawful overtime wages. Plaintiff routinely worked 60-70 hours per week, and up until December 2016 – which was just one short month before his unlawful discharge – Plaintiff was not paid at the statutory overtime rate for his overtime hours.

18.     Additionally, beginning in March 2016, Defendant Posma, Plaintiff's direct supervisor, regularly and frequently made racially charged remarks and engaged in blatantly discriminatory behavior, creating an untenable work environment for Plaintiff. When Plaintiff raised concerns about Defendant Posma's egregious acts of discrimination, Defendant Parts Authority not only failed to address the harassment, but instead, engaged in retaliatory conduct. Furthermore, when Plaintiff asked for a transfer so that he would not be subject to a hostile work environment based on his race, Defendants ignored his reasonable request, and again engaged in retaliatory conduct, ultimately terminating Plaintiff's employment.

## BACKGROUND FACTS

19.     Defendant Parts Authority is an automotive parts supplier that distributes components used in automobiles and trucks throughout the New York area and wider east coast region.

20.    Defendant Posma is a Caucasian male and an employee of Defendant Parts Authority. Posma was Plaintiff's direct manager from March 2016 through his unlawful discharge in January 2017.

21.    Defendant Posma was and is the manager of Defendant's "Internet" or e-commerce department, in which capacity he managed and oversaw the day-to-day operations, distributions and shipment of auto parts orders to online purchasers.

22.    Plaintiff began working in the auto parts industry in 1999 as a "conveyor boy" with Woodbury Automotive Warehouse ("Woodbury"). Plaintiff worked at Woodbury for nearly fifteen years, receiving several promotions, and remaining with the company until 2013 when Defendant Parts Authority purchased Woodbury. Almost immediately, his position changed and the terms of his employment changed for the worse.

**Defendants Willfully Misclassify Plaintiff to Avoid Paying Lawful Wages**

23.    From the start, Defendants willfully misclassified Plaintiff, as an "exempt" worker, to avoid paying him his lawful wages.

24.    During the relevant time period, Plaintiff was referred to by Parts Authority's human resources department as a "floor manager," and/or "line manager" and/or "product manager," and, as of March 2016, a "manager" associated with the E-Commerce department.

25.    The term "manager" was entirely misleading because Plaintiff did not assume any managerial job duties or responsibilities at any time during the course of his employment with Defendants.

26.    Plaintiff's job duties included, but were not limited to, data entry, setting up and shutting down the work area, collecting and scanning items into warehouse inventory, retrieving parts to fill customer orders, and loading and unloading parts to and from trucks.

27.     Furthermore, Plaintiff was not given *any* responsibility commensurate with a management role, at any point during his employment with Defendants. Specifically, he lacked the ability to hire and fire employees, initiate disciplinary proceedings, recommend employees for promotion or demotion, or to carry out any other traditional managerial functions.

28.     Having misclassified Plaintiff as "manager," Defendants then required that he work in excess of forty hours per week, and willfully failed to pay him the statutorily required one-and-one-half times his base wages for his overtime hours.

29.     On average, Plaintiff was working 60-70 hours per week.  Nonetheless, he was not paid *at all* for the hours worked in excess of forty (40) hours per week.

30.     Plaintiff's hourly rate varied to some degree during the relevant time period, but one thing remained unchanged: He was paid a flat rate each pay period independent of how many hours he worked.

31.     This pattern remained unchanged until December 2016, approximately one month before Plaintiff's unlawful discharge, at which point Plaintiff's wage became hourly, at the rate of $16.84 per hour.

**Defendants Engage in Racial Discrimination and Hostile Work Environment**

32.     In or about March 2016, there was a change in the terms and conditions of Plaintiff's employment.

33.     Plaintiff was assigned to work in the E-Commerce (online sales) Department with Defendant Robert Posma. Right away, Defendant Posma, a Caucasian, began discriminating against Plaintiff, because of his race.

6

34.     For instance, from the very beginning, Posma was more critical of Plaintiff's work than that of his similarly situated Caucasian co-workers, and routinely dismissed Plaintiff's ideas and demeaned the value of his opinion.

35.     Furthermore, Posma often sought to publicly embarrass and humiliate Plaintiff in front of colleagues and other managers, and was especially critical of Plaintiff during meetings.

36.     Often, Posma's criticism of Plaintiff was delivered in the form of expletive-laden, violent, and animated tirades and screaming fits regarding his race which caused Plaintiff great embarrassment, distress and humiliation.

37.     For instance, in or about April of 2016, Posma began referring to himself and Plaintiff as "salt and pepper" and/or "ebony and ivory," in the presence of other colleagues and supervisors.

38.     Plaintiff advised Posma on several occasions that this language made him uncomfortable, but this did not deter or prevent Posma from continuing to use this language for the duration of Plaintiff's employment.

39.     In or about May of 2016, Posma commented, in the presence of his son (who had accompanied him to work on several occasions) that he should not be "stupid like them" (referring and pointing to Plaintiff and another African-American colleague), inferring that Plaintiff was not intelligent because he was an African-American.

40.     Beginning in May of 2016, Posma began to frequently question Plaintiff regarding his hygienic habits, accusing him of "stinking" and "needing to take a shower."

41.     In May-July of 2016, Posma frequently made additional racial slurs and remarks directly to Plaintiff, for example, stating that he (Posma) would never take medical advice from a "black man;" and stating that black people did nothing but "smoke weed."

42.     When Posma spoke to Plaintiff about his work duties, his words were harsh and condescending. Posma made it clear that he perceived Plaintiff to be inferior to him.

43.     In or around June 15, 2016, Plaintiff was made to attend a meeting with Posma and other managers during which Plaintiff was made fun of, criticized and belittled extensively, by Posma, in the presence of all attendees.

44.     Following this meeting, Plaintiff emailed another manager, John Labruna ("Labruna") to complain in writing of Posma's treatment and to make clear that Plaintiff could no longer tolerate Posma's racist jokes and grossly offensive comments.

45.     Parts Authority did nothing to investigate Plaintiff's complaint, and did not discipline or question Posma in any manner as a result of Plaintiff's allegations.

46.     To the contrary, Posma's discriminatory behavior worsened after Plaintiff made the complaint. Posma became even more critical of Plaintiff and made increasingly offensive and hostile racial jokes and slurs in Plaintiff's presence.

47.     Moreover, Posma blatantly retaliated against Plaintiff. He began to frequently cite Plaintiff for disciplinary reasons and alleged poor work performance, and gave Plaintiff negative performance reviews and other unwarranted critical feedback to the other managers.

48.     As a result of Posma's continued racist comments and jokes, Plaintiff's workplace environment became intolerable.

**Defendants Engage in Retaliation After Plaintiff Requests a Transfer**

49.     Eventually, in or about October 28, 2016 Plaintiff met with Azzam Haniff ("Haniff"), a director, and John Labruna ("Labruna"), a manager, and requested a transfer to another department. Plaintiff explained that he could no longer bear Posma's hostile attitude and racially charged comments and slurs.

8

50.     Plaintiff's reasonable request for a transfer yielded no results. Once again, Parts Authority did nothing to prevent and promptly correct the harassing behavior. To the contrary, Posma's retaliation escalated.

51.     Predictably, Poma found out about Plaintiff's request for a transfer and on October 30, 2016, he emailed the other managers in the department, viciously criticizing Plaintiff's job performance and recommending that Plaintiff be disciplined or dealt with accordingly.

52.     Posma boldly told Plaintiff, "Sometimes I just want to fuck you up," and he started the process of firing Plaintiff.

53.     From November 2016 to January 1, 2017, Posma's hostile and racist treatment of Plaintiff continued with increased intensity and rancor.

54.     Posma continued to regularly accuse Plaintiff of not bathing, smoking marijuana and being under the influence of marijuana, and of being "stupid" because of his status as an African-American.

55.     Posma continued to belittle Plaintiff in front of colleagues and supervisors, with taunts and jeers occurring throughout the workday.

56.     Posma would often question Plaintiff on his eating habits and ask if Plaintiff was eating fried chicken or other stereotypical African-American preferred foods.

57.     On January 1, 2017, Plaintiff again spoke to Haniff and requested a transfer to another department. Plaintiff advised that he was willing to work for any other department in the company so long as he did not have to report to Posma any longer.

58.     Directly following Plaintiff's January 1, 2017 meeting with Haniff, on or about January 3, 2017, he received another negative performance review from Posma. The negative

performance review recommended that Plaintiff be required to attend a series of leadership training seminars to improve his allegedly poor job performance.

59.     When Plaintiff reported to work the following week, on or about January 13, 2017, Plaintiff was advised that he was being suspended for one week's time.

60.     When Plaintiff reported back to work after serving his suspension, on or about January 20, 2017, he was notified via text message that he had been terminated.

61.     This termination was plainly unlawful. It was the foreseeable culmination of the long months of Posma's unrelenting discriminatory conduct toward Plaintiff. It was the expected conclusion after Plaintiff's repeated requests for assistance and a transfer to another department were met with denials and retaliation.

## FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS
*Federal Overtime Violations*

62.     Plaintiff repeats, reiterates, and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

63.     Plaintiff was required to work in excess of forty (40) hours per week without being compensated for those hours at the statutorily required rate of one-and-a-half (1 ½) times his regular rate of pay.

64.     These practices were willful and lasted from the date of Parts Authority's acquisition of Woodbury in 2013 through December 2016.

65.     These practices were in violation of the FLSA.

66.     At no time was Plaintiff considered "exempt" from the FLSA compensation requirements.

67.     As a result of the foregoing, Plaintiff is entitled to recover all of his unpaid overtime wages, as well as an amount equal to their unpaid wages as liquidated damages, and the reasonable attorney's fees and costs of this action. 29 U.S.C. § 216(b).

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS
*Unpaid Overtime under the NYLL and NYCCRR*

68.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

69.     N.Y. Lab. Law § 160 and NYCCRR Tit. 12, § 142-2.2 require employers to compensate their employees at a rate not less than one-and one-half times their regular rate for any hours exceeding forty (40) in a workweek.

70.     As described above, Plaintiff consistently worked in excess of forty hours per week, yet the Defendant failed to compensate Plaintiff in accordance with the NYLL's and NYCCRR's overtime provisions.

71.     These practices were willful and lasted from the date of Parts Authority's acquisition of Woodbury in 2013 through December 2016.

72.     These practices are in violation of Labor Law §§ 650 *et seq*.

73.     At no time was Plaintiff considered "exempt" from the NYLL compensation requirements.

74.     As a result of the foregoing, Plaintiff is entitled to recover all of his unpaid overtime wages, as well as an amount equal to their unpaid wages as liquidated damages, and the reasonable attorney's fees and costs of this action.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANTS

*Discrimination and Hostile Work Environment under 42 U.S.C. § 1981*

75.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

76.     Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment.

77.     Here, Defendants plainly discriminated against Plaintiff in violation of 42 U.S.C. § 1981 by subjecting him to a hostile work environment. Specifically, beginning on or about March 2016, Plaintiff was subject to highly offensive and grossly improper racial remarks and abusive conduct, on a frequent basis, such that his workplace was permeated with discriminatory intimidation, and became intolerable.

78.     As a direct and proximate result of Defendants' discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of future income, compensation and benefits, for which he is entitled to an award of monetary damages and other relief.

79.     As a direct and proximate result of Defendants' discriminatory conduct in violation of 42 U.S.C. § 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages and other relief.

## FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS

*Racial Discrimination, Harassment and Hostile Work Environment*
*in Violation of the NYSHRL/NYCHRL*

80.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

81.     The NYSHRL and NYCHRL prohibit discrimination in the terms, conditions and privileges of employment on the basis of an individual's race.

82.     Defendants discriminated against Plaintiff in violation of the NYSHRL and NYCHRL by subjecting Plaintiff to a hostile work environment, in the form of highly offensive and grossly improper racial remarks and abusive conduct, on a frequent basis, such that his workplace was permeated with discriminatory intimidation, and became intolerable.

83.     As a direct and proximate result of Defendants' discriminatory conduct in violation of the NYSHRL and NYCHRL, Plaintiff has suffered, and continues to suffer, monetary and/or economic damages, including, but not limited to, loss of future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

84.     As a direct and proximate result of Defendants' discriminatory conduct in violation of the NYSHRL and NYCHRL, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which he is entitled to an award of monetary damages, punitive damages and other relief.

## FIFTH CLAIM FOR RELIEF AGAINST DEFENDANT ROBERT POSMA
*Racial Discrimination, Harassment, and Hostile Work Environment*
*in Violation of the NYSHRL/NYCHRL*

85.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

86.     Under the NYSHRL, an employee may be held personally liable for harassment if he participated in the harassment and discrimination. See N.Y. Exec. Law § 296(6).

87.     Here, as detailed above, Posma personally directed racially offensive language at Plaintiff routinely and repeatedly. Furthermore, when Plaintiff wrote a complaint about the harassment, Posma's discrimination only escalated.

88.     Subsequently, when Plaintiff asked for a transfer to another department, Posma's discriminatory and retaliatory conduct escalated further.

89.     Posma created an untenable hostile work environment and thus unlawfully discriminated against Plaintiff in the terms and conditions of his employment, based on his race.

90.     As a result of the foregoing, Plaintiff has suffered and will continue to suffer lost wages, benefits, and other damages.

91.     As a result of the foregoing, Plaintiff has suffered and continues to suffer emotional distress, pain, humiliation, and other damages.

## SIXTH CLAIM FOR RELIEF AGAINST DEFENDANTS
*Retaliation and Unlawful Discharge in Violation of the NYCHRL and NYSHRL*

92.     Plaintiff repeats, reiterates and realleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

93.     The NYSHRL prohibits retaliation against any individual "because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint…" See NY EXEC § 296.

14

94.     Likewise, the NYCHRL prohibits retaliation by any person against any individual who in good faith complains about discriminatory practices to which he/she has been subjected. See N.Y.C. Admin. Code § 8-107(7).

95.     Here, as described above, the Defendants retaliated against Plaintiff in violation of the NYSHRL and NYCHRL when Plaintiff, in good faith, voiced his opposition to Defendants' unlawful discriminatory practices based on his race.

96.     Specifically, or about June 2016, Plaintiff engaged in protected activity by e-mailing his manager about Posma's discriminatory.

97.     Immediately thereafter, he began receiving negative work performances and the discrimination *increased,* rather than decreased.

98.     Similarly, or about January 2017, Plaintiff engaged in protected activity again by contacting his director Haniff, and asking for a transfer, due to Posma's unrelenting abuse and discrimination.

99.     As soon as Plaintiff asked for this transfer, Defendants engaged in retaliatory conduct; first suspending him for a week, and then baselessly terminating his employment.

100.    Defendants' alleged reasons for terminating Plaintiff were entirely pretextual.

101.    Defendants fired Plaintiff because he engaged in protected activity when he complained about the persistent racial discrimination and sought a transfer.

102.    The temporal proximity between Plaintiff's exercise of his rights under NYSHRL and NYCHRL and Defendants' adverse employment actions give rise to an inference of retaliation.

103.    As a result of the foregoing, Plaintiff has suffered and will continue to suffer lost wages, benefits, and other damages.

104.     As a result of the foregoing, Plaintiff has suffered and continues to suffer emotional distress, pain, humiliation, and other damages.  Plaintiff also seeks punitive damages for this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendants as follows,

A.     Preliminary and permanent injunctions against the Defendants and their officers, owners, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs, and usages set forth herein;

B.     A judgment declaring that the practices complained of herein are unlawful and in violation of the aforementioned United States, New York State and New York City laws.

C.     An order restraining Defendants from any retaliation against Plaintiff for participation in any form in this litigation;

D.     Damages which Plaintiff have sustained as a result of the Defendants' conduct, including all unpaid wages and any short fall between wages paid and those due under the law, back pay, front pay, general and special damages for lost compensation and employee benefits that he would have received but for the Defendants' conduct, for out-of-pocket losses that Plaintiff has incurred due to the Defendants' conduct;

E.     An award for all non-monetary and/or compensatory damages, including but not limited to, compensation for severe mental anguish and emotional distress, humiliation, depression, embarrassment, stress and anxiety, loss of self-esteem, self-confidence and personal dignity, and emotional pain and suffering and any other physical or mental injuries;

F.     Punitive damages to the extent authorized by law in an amount commensurate with Defendants' ability and so as to deter future unlawful conduct;

G.      Liquidated damages as recoverable under the FLSA and New York Labor Law;

H.      Awarding Plaintiff costs and disbursements incurred in connection with this action, including reasonable attorneys' fees, expert witness fees and other costs;

I.      Pre-judgment and post-judgment interest, as provided by law; and granting Plaintiff other and further relief as this Court finds necessary and proper.

Dated:  New York, New York
        December 29, 2017

                                        Respectfully submitted,

                                        **JOSEPH & NORINSBERG, LLC**


                                By:     _____
                                        Bennitta L. Joseph, Esq.
                                        Chaya M. Gourarie, Esq.
                                        225 Broadway, Suite 2700
                                        New York, New York 10007
                                        Tel: (212) 227-5700
                                        Fax: (212) 406-6890
                                        *Attorneys for Plaintiff*

TO:

ABRAMS, FENSTERMAN, FENSTERMAN,
EISMAN, FORMATO, FERRARA, WOLF & CARONE, LLP.
Sharon P. Stiller, Esq.
160 Linden Oaks, Suite E
Rochester, NY 14625
SStiller@abramslaw.com
*Attorneys for Defendant Part Authority*